Cushing, J.
Plaintiff, Lotta Burke, brought an action as a representative of the Cincinnati Local of the Communist Labor Party of Ohio against the American Legion of Ohio, a corporation under the laws of the state of Ohio, the Robert E. Bentley Post No. 50, of the American Legion, a corporation *244 under the laws of the state of Ohio, and a number of individuals, members of the Robert E. Bentley Post.
Plaintiff claims that the Communist Labor Party was organized for the purpose of holding meetings for educational and social purposes, conducting lectures, discussing political and economic questions, conducting political campaigns, and distributing-literature; that the defendants, other than the corporations named, destroyed certain property used in the furtherance of the scheme to establish in this country a soviet government, consisting of books, pamphlets, literature, etc., the property of the said local; that by reason of the acts and conduct of the defendants said local was brought into unfavorable notoriety; that its members were without police protection, and were deprived of the proposed use and enjoyment of their headquarters and the right of peaceable assemblage, to their damage in the sum of about fifty thousand dollars, for which they prayed judgment with costs.
The answer of the defendants admitted the incorporation of the American Legion and the Robert E. Bentley Post, No. 50, the membership of the defendants, and that the plaintiff and those on whose behalf the action was brought are members of the Cincinnati Local of the Communist Labor Party of Ohio, and were such November 18, 1918.
The answer denied that the purposes of said association were correctly stated in the petition, and averred that the plaintiff and her associates were engaged in a criminal conspiracy against the constitution and laws of the United States and of the state of Ohio; that the purpose was to bring about *245 the subversion and downfall by violence of the Constitution of the United States, its government, and that of Ohio, and to substitute therefor, by revolution and violence, a soviet form of government; and, further, charged that the plaintiff and her associates were in the act of uttering, printing and publishing scurrilous and abusive language of and concerning the form of government of the United States, and of Ohio, contrary to the statutes, and that the alleged meetings and lectures, campaigns and the distribution of literature were used as a means whereby said aims and purposes of said conspiracy would be advanced and promoted; that plaintiff and her associates advocated the unlawful method of terrorism as a means of accomplishing their said industrial and political reform.
Plaintiff’s reply admitted that the purpose of their organization was to bring about fundamental changes in the political and industrial systems of the United States, and to that extent admitted a revolutionary purpose. She denied that the downfall of the government was to be accomplished by violence, and restated that the form of government to be installed in the United States and Ohio was to be the form prescribed by the Russian Soviet or Third Internationale, and was to be in favor of, and under the control of the wage workers, members of said organization, to the exclusion of all other classes of people in the United; States; that the government so to be established was to be a dictatorship, directed and controlled by the organization at Moscow in Russia; and that the people of the United States were to be subjects of the world soviet organization, and not citizens of the United *246 States. This means, as we understand it, that the people are to be deprived of the right to vote; nor are they to have any voice in matters of government, be it national, state or municipal; that they may not choose or pursue for themselves any business, trade, avocation, or profession, but in all such matters must obey the dictates of the soviet; that they cannot acquire or own property of any kind, character or description. The ownership and control of all property, and all individual liberty, life and the pursuit of happiness are to be taken from the individuals and vested in the dictator. The dictator is not to be selected by the people of the United States. He is to be named by the Third Internationale at Moscow.
The plan proposed for bringing about this change was that the members of the plaintiff’s organization, whether they be citizens of Ohio, or the United States, or foreigners, should proceed from their places of assemblage, whatever that means, to take charge of the government, the industrial institutions of the country, its food supply, mines and railroads, and, after having so taken charge, force would be used to prevent the citizens of the United States, including its army, from interfering with the dictatorship thus established. This means, that the change would be brought about in the manner stated and not by ballot.
The basis qf this action is in tort for the destruction of literature and humiliation brought about by the acts of the defendants.
The situation thus presented requires some consideration of the present form of government of the United States, and the state of Ohio, the duty *247 of courts, the rights of the parties, whose admitted purpose is the destruction of the present form of government and the substitution of another form in the interest of one class of people only, and that by a method unknown to the constitution and laws of this country.
This government is a Republic. Its governmental affairs are open to all citizens, and are administered by the few as the representatives of the many. The underlying principle is the right of representation, and the duty is imposed on every citizen to take part in the selection of such representatives. The people own the government, and operate it through their chosen representatives, for the equal benefit of all citizens, without respect to persons.
The government proposed by the plaintiff and her associates is a dictatorship, which means, in this instance, a centralization of power in one or a few individuals. Centralized governments have existed only for such length of time as the ruling class was able to hold in subjection the people not within the ruling class.
For the quarter of a century, last past, there have been two trends away from this Republic, or the representative form of government. One, toward a pure democracy. The other, toward a centralization of authority. For some years there has been persistent propaganda to speak of this government as a democracy rather than a republic. Both trends have had earnest advocates. From these trends it was an easy step for the Socialist Labor party to conclude that the people of this country were not satisfied with their present form of gov *248 ernment, and that in their desire for a change from a Republic, the people could be induced to adopt the soviet form of government, the most radical form of centralization, as easily as they could an absolute democracy.
The statements in open court of counsel for plaintiff lead to the conclusion that the organization of which plaintiff was a member, when considered in connection with the constitution and laws of the United States and of the state of Ohio, might be considered a public nuisance. And if we consider the citation of authorities on which he relies for a reversal, we may conclude that the literature, pamphlets and the acts of the said organization might also be considered a public nuisance.
It is claimed by plaintiff that no citizen or group of citizens has a right to abate a public nuisance. In support of this contention, counsel for plaintiff cites the case of Meeker v. Van Rensselaer, 15 Wendel (N. Y.), 397. The question in that case arose from the fact that some fifty occupants of a tenement house in Albany, N. Y., were stricken with the cholera, and it was held that the citizens had no right to abate the public nuisance thus created.
Other cases cited were such as running a vessel into and destroying an oyster bed, the pollution of a stream, blocking a lighthouse, and the interference by a telegraph company with branches of trees on a highway.
Counsel also cites and quotes at length from Chicago & Erie Rd. Co. v. Keith, 67 Ohio St., 279. The facts in that case were that the railroad company had failed, as required by statute, to con *249 struct and keep open ditches of sufficient depth, width and grade to conduct to a proper outlet the water that accumulated along its railroad bed.
Another case cited by counsel was Kasch, etc., v. City of Akron, 100 Ohio St., 229, where it was held that a municipality has authority to abate a nuisance. It was held that where an owner of private property permits stagnant water to be and remain upon his land, thereby endangering the public health, a municipality has the authority to direct the proprietor to abate the nuisance, and, upon his failure, it may enter upon the premises and abate it, and assess the costs against the land.
Not one of the cases cited is authority for this case.
The other view of the situation is that the men here accused, and their associates, were called to defend this country against a threatened, if not an attempted invasion by a foreign power. In that service, they were sent to a foreign land. There they were confronted first with the havoc, desolation, suffering and misrule of centralized government. They had the opportunity and saw the oppression, starvation and tyranny of the dictatorship of the soviet, or Third Internationale form of government.
After the war was over and the citizen soldiers had returned to this land, where every citizen, regardless of class,, is guaranteed the right to life, liberty and the pursuit of happiness, with their sturdy forms, fine brown faces, and helmet-covered heads, swinging in unison from the ports of disembarkation, they scattered to their homes little dreaming that their welcome home was not unani *250 mous. However, they soon saw the soviet openly advancing its propaganda, pledged to overthrow this government. Their minds became so inflamed that for the moment they forgot the usual self-restraint and destroyed some seditious literature.
Their counsel contend that the literature destroyed was without value, and that, therefore, plaintiff and her associates are not entitled to damages.
The literature destroyed advocated the seizure of government, the transportation facilities, the food supply, and the business organizations of the country. And while the plaintiff disclaimed any intention to use force in the seizure above stated, her counsel admitted that force would be used .to hold possession after it had once been taken. Such acts would be a destruction by violence, the same as if armed force was resorted to in the first instance.
Plaintiff claims that she has been deprived of the right of assemblage and due process of law. Under the facts in this case, that is a strange and most unusual contention. While Section 16, Article I of the Constitution of Ohio, guarantees to every person for injury done him in his lands, goods, person or reputation a remedy by due course of law, plaintiff in this case can not complain. Her cause was submitted in an orderly manner to a court and jury. The jury found that she had not been damaged. She is not satisfied with that judgment, and this court is asked to say that it was erroneous. Such a holding would in effect be that the court would lend its aid in the destruction of the laws and constitutions of the United States and of Ohio. Lord v. Chadbourne, 42 Me., 429.
*251 The business of the plaintiff, and the organization of which she is a member, is unlawful. Perhaps a more accurate statement of the situation would be that the plaintiff and her associates are using their best efforts to destroy the laws of this country, and to establish, in the place of the laws by which we are governed, a government of individuals. For interfering with their efforts and destroying literature in furtherance of their plan, the defendants were sued in tort. Under the facts in this case, as in the case of Frazier v. Brown, 12 Ohio St., 294, at 299, the law will regard as an injury that only which contravenes or interferes with a recognized legal right.
From a consideration of the record, we find that the verdict and judgment of the court below are not manifestly against the weight of the evidence, and that judgment will, therefore, be affirmed.

Judgment affirmed.

Hamilton, P. J., and Buchwalter, J., concur.